UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ALVERY LOUIS HORTIZ, III, | ) |
|---|---|
| Petitioner, | ) |
| vs. | ) Case No. 4:05CV01763 ERW |
| STATE OF MISSOURI and DAVE DORMIRE, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Thomas C. Mummert, III [doc. #20], pursuant to 28 U.S.C. § 636(b). Petitioner has filed Objections to the Report and Recommendation [doc. #21]. When a party objects to a magistrate's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objects. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).

**I.   BACKGROUND**[1]

Petitioner was convicted of first degree murder, armed criminal action, forcible rape, and forcible sodomy in the Circuit Court of the City of St. Louis, Missouri. He was later sentenced as a prior offender to life imprisonment without probation or parole on the murder charge and to three consecutive thirty year terms of imprisonment on the other three felonies. Petitioner

---

[1] The Magistrate Judge's Report and Recommendation recites the facts and procedural history of this case, therefore this Court will not repeat it here. The Court will, however, note those facts which are pertinent to the discussion.

appealed the judgment of the trial court, and the Missouri Court of Appeals, Eastern District, affirmed the judgment. *See State v. Hortiz*, 46 S.W.3d 20 (Mo. Ct. App. 2001). In 2002, Petitioner filed a Motion to Vacate, Set Aside or Correct Judgment and Sentence in the Circuit Court of the City of St. Louis, Missouri. The Circuit Court denied Petitioner's motion for post-conviction relief. Again, Petitioner appealed the judgment of the trial court, and again the Missouri Court of Appeals, Eastern District, affirmed the judgment. *See Hortiz v. State*, 171 S.W.3d 161 (Mo. Ct. App. 2005).

On October 3, 2005, Petitioner filed his Petition for Writ of Habeas Corpus [doc. #2] with this Court. His Petition sets forth nine grounds for federal habeas relief: (1) that he was denied due process and the right to a fair trial when the trial court overruled his objection to Judy Anderson's testimony that Petitioner told her that she would be next if she caused him to go back to jail; (2) that he was denied due process and the right to a fair trial when the trial court denied his request for a mistrial when Judy Anderson testified about Petitioner's statement; (3) that he was denied due process and the right to a fair trial when the trial court allowed the prosecution to introduce the testimony of Billie Barrett; (4) that he was denied due process and the right to a fair trial because there was insufficient evidence to establish that Petitioner committed any of the four charged offenses; (5) that he was denied due process and the right to a fair trial when the trial court denied his request for a mistrial after Judy Anderson testified that Petitioner had slapped her; (6) that he was denied due process and the right to a fair trial when the trial court denied his request for a mistrial after Judy Anderson testified that she was afraid of Petitioner; (7) that he was denied due process, a fair trial, and the effective assistance of trial counsel when his counsel failed to (a) subpoena Marshall Hortiz, Susan Calcaterra, Alvery Hortiz, Jr., and Sandra Hortiz,

(b) move to strike Jurors Constance Murphy and Roosevelt Willis from the jury panel, and (c) call expert witnesses; (8) that he was denied the effective assistance of trial counsel when counsel failed to call alibi witnesses; and (9) that he was denied due process and the right to an impartial jury by the presence of Constance Murphy and Roosevelt Willis on the jury. Magistrate Judge Thomas C. Mummert rejected each of Petitioner's nine grounds for relief. Petitioner objected to each of the Magistrate Judge's findings.

## II. STANDARD OF REVIEW

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotation omitted). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004).

## III. DISCUSSION

## A. TESTIMONY OF JUDY ANDERSON

Four of Petitioner's nine grounds for habeas relief deal with the testimony given by Judy Anderson at Petitioner's jury trial. Specifically, Petitioner claims that he was denied due process and the right to a fair trial when the trial court permitted Ms. Anderson's testimony that Petitioner told her that she would be next if she caused him to go back to jail, and when the trial court denied Petitioner's requests for mistrial after Ms. Anderson's unsolicited testimony that Petitioner had slapped her and that she was afraid of Petitioner. Each of these alleged grounds for relief will be addressed, in turn.

### 1. *Ground One*

At trial, Ms. Anderson testified that the Petitioner had threatened that she "would be the next one" if she caused Petitioner to go back to jail. The trial court overruled Petitioner's objection to this testimony. On appeal, Petitioner challenged the trial court's ruling and, in the present case, Petitioner argues that the ruling is grounds for habeas relief. However, Petitioner's argument must fail, as the claim is procedurally barred due to Petitioner's failure to preserve the issue for appellate review.

The Missouri Court of Appeals, Eastern District, determined that Petitioner had failed to properly preserve the issue for review because he failed to object to the testimony at the earliest opportunity, and because he did not move to strike the answer. "Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Skillicorn v. Luebbers*, 475 F.3d 965, 976-77 (8th Cir. 2007) (citing

4

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 492, 496 (1986)). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Greer v. Minnesota*, 493 F.3d 952, 957-58 (8th Cir. 2007) (quoting *Murray*, 477 U.S. at 488).

Petitioner has failed to set forth an explanation or description of any sort that would establish the existence of cause and actual prejudice with respect to the procedural default at issue in this case. Further, Petitioner has not presented any new evidence to the Court that tends to establish that he is actually innocent of the crimes for which he was sentenced. Thus, this ground for relief is procedurally barred and it will be dismissed on that basis.

**2.** *Ground Two*

In addition to objecting to Ms. Anderson's testimony about Petitioner threatening that she "would be the next one," Petitioner also requested a mistrial. The trial court denied Petitioner's request, and Petitioner argued that the denial was wrongful, both on appeal and in the present habeas proceeding.

The same procedural concern regarding failure to object at the earliest opportunity arises with respect to this second ground for relief as arose with respect to the first ground. However, the Missouri Court of Appeals, Eastern District, reviewed the denial of Petitioner's mistrial request for plain error. "[S]tate court review of a claim for plain error does not preclude later consideration of the same argument in a collateral proceeding in federal court." *Thomas v. Bowersox*, 208 F.3d 699, 701 (8th Cir. 2000). However, "in conducting federal habeas review, [a court] may not simply conduct [its] own plain error review *de novo*," rather, the review is highly

5

deferential and "is limited to federal constitutional errors." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

The trial transcript reveals that the prosecutor was soliciting testimony from Ms. Anderson, claiming that what the Defendant stated to her was a threat; a prior bad act. The trial judge carefully examined the essence of Defendant's statement, and permitted the prosecutor to further examine Ms. Anderson. When she did not respond as anticipated, other objections were made and the court gave cautionary instructions to the jury. Finally, a question was posited to Ms. Anderson and she answered, "He said that if I caused him to go back to jail that I would be the next one, that was his exact words." The evidence was admitted as a threat made by Defendant against Ms. Anderson. Generally, "'a state court's evidentiary rulings that are based on state law do not implicate a criminal defendant's constitutional rights with respect to the sufficiency of evidence and thus are not cognizable on habeas review.'" *Sera v. Norris*, 400 F.3d 538, 547 n.8 (8th Cir. 2005) (quoting *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001)).

To the extent Defendant claims the statement of Ms. Anderson identified a prior bad act, Defendant is correct that evidence of prior crimes or bad acts is generally "inadmissible to show the propensity of the defendant to commit the charge for which he is on trial." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005); *see also* Fed. R. Evid. 404(b). However, "[n]o due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [Defendant] of fundamental fairness.'" *McDaniel v. Lockhart*, 961 F.2d 1358, 1360 (8th Cir. 1992) (second alteration in original) (quoting *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th

Cir. 1986)). The Court cannot find the testimony to be sufficiently prejudicial to find a violation of due process.

"Mistrial is a drastic remedy reserved for the most extraordinary circumstances, and the decision whether to grant a mistrial is left to the sound discretion of the trial court." *State v. Brown*, 998 S.W.2d 531, 549 (Mo. 1999) (en banc). Petitioner's federal constitutional rights were not violated as a result of Ms. Anderson's admitted testimony and his second ground for habeas relief must fail.

### 3. *Ground Five*

Petitioner's fifth ground for habeas relief focuses on Ms. Anderson's unsolicited testimony that Petitioner "slapped [her] and made [her] head go around in circles." Immediately after Ms. Anderson made this statement, Petitioner objected and requested a mistrial. The trial court instructed the jury to disregard the statement and the statement was stricken from the record, but the trial court rejected Petitioner's request for a mistrial. Petitioner appealed the decision, arguing that the court wrongfully rejected his request. The appellate court affirmed, and Petitioner now presents the same argument as his fifth ground for habeas relief.

Ms. Anderson's statement was clearly inadmissible. Her statement dealt with a possible prior bad act of Petitioner, evidence which is inadmissible to demonstrate his propensity to commit the alleged crime. Further, unlike his threat that Ms. Anderson "would be the next one," the statement did not establish motive, intent, the absence of mistake, a common scheme or plan, or identity. *Osborne*, 411 F.3d at 917; *see also* Fed. R. Evid. 404(b); *Kenley*, 693 S.W.2d at 81. Before the trial began, the trial court properly determined that Ms. Anderson would not be permitted to testify about any irrelevant acts of violence that Petitioner may have committed

7

against her. Her testimony about Petitioner slapping her was a clear violation of the trial court's pretrial ruling as to unrelated prior bad acts; thus, the trial court properly sustained Petitioner's objection to the statement and instructed the jury to disregard the response.

The trial court did not, however, go so far as to grant Petitioner's request for a mistrial. As previously noted, "[m]istrial is a drastic remedy reserved for the most extraordinary circumstances." *Brown*, 998 S.W.2d at 549. A trial court has clear discretion to determine whether it is necessary to declare a mistrial due to prejudicial testimony. "Furthermore, the admission of an unresponsive, prejudicial statement is ordinarily cured by striking the testimony and instructing the jury to disregard the remark." *United States v. Moore*, 911 F.2d 140, 143 (8th Cir. 1990) (internal quotations and alterations omitted). In this case, the trial court properly denied Petitioner's request for a mistrial. The testimony given by Ms. Anderson was unsolicited and apparently inadvertently revealed. *See, e.g.*, *Black v. Shultz*, 530 F.3d 702, 707-08 (8th Cir. 2008) (unintentional disclosure in violation of motion in limine order does not warrant mistrial); *United States v. Katz*, 445 F.3d 1023, 1035 (8th Cir. 2006) (unsolicited statements in violation of pretrial order do not warrant mistrial). Further, although the testimony was inadmissible, the court had the testimony stricken from the record and instructed the jurors to disregard it, thereby curing the prejudicial impact of the statement. Thus, it cannot be said that the trial court's refusal to grant a mistrial violated Petitioner's constitutional rights.

   **4.**   *Ground Six*

Similar to his fifth ground for habeas relief, Petitioner's sixth ground deals with unsolicited testimony from Ms. Anderson. At trial, Ms. Anderson stated that she was afraid of Petitioner. Petitioner objected to the statement immediately after it was made and requested a mistrial. The

8

trial court rejected Petitioner's request for a mistrial, but the court did strike the testimony from the record and instructed the jury that they were to disregard the statement. Both in his unsuccessful appeal and in the present habeas proceeding, Petitioner argues that the trial court's rejection of his request was wrongful.

Again, Ms. Anderson's unsolicited statement violated the trial court's pretrial ruling regarding the irrelevant prior bad acts of Petitioner. Thus, the statement was clearly inadmissible and the trial court properly had it stricken from the record and instructed the jurors to disregard it. However, because the statement was unintentional and the trial court cured its prejudicial impact, the extraordinary circumstances required to justify a mistrial were not present. Thus, the trial court properly refused Petitioner's request for a mistrial.

### B. TESTIMONY OF BILLIE BARRETT (*Ground Three*)

In his third ground for habeas relief, Petitioner argues that the trial court improperly permitted the testimony of Billie Barrett, the sister of Victim Christine Santambrogio. At trial, the prosecution sought to have Ms. Barrett testify regarding the ownership of two jackets and a radio. Ms. Barrett had not been endorsed as a witness prior to trial because the prosecution did not anticipate that ownership of the articles would become an issue in the case. However, through cross-examination of Christopher Stanfield and Annmarie Vastine, Petitioner created an inference that the jackets and radio did not belong to the victim, rather they belonged to the perpetrator of the crime. As a result, the trial court permitted Ms. Barrett's testimony, over the objection of Petitioner. Petitioner now argues that his due process rights were violated because he was not notified that Ms. Barrett would be testifying and because Ms. Barrett was able to listen to all of the testimony given at trial before she testified.

9

"'A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). Any prejudice Petitioner suffered as a result of the lack of notice and Ms. Barrett's presence during prior testimony was minimal. Not only was Petitioner's trial counsel given the opportunity to meet with Ms. Barrett prior to her taking the stand, but her testimony was limited to her knowledge of the ownership of the two jackets and the radio.[2] Further, on cross-examination, it was revealed to the jury that Ms. Barrett had been in the courtroom during the trial and had heard all of the prior testimony. The trial court's admission of Ms. Barrett's testimony did not prejudice Petitioner, thus, the decision cannot form the basis for habeas relief.

**C.     INSUFFICIENT EVIDENCE TO CONVICT (*Ground Four*)**

In his fourth ground for habeas relief, Petitioner argues that the prosecution did not establish that he committed the offenses he was charged with beyond a reasonable doubt. When reviewing the sufficiency of the evidence, the Court's review "is limited to determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Gibbs v.*

---

[2]There was initially some confusion regarding whether Ms. Barrett was going to testify about all three items or just one of the jackets. However, this distinction is irrelevant, considering that Ms. Barrett's brief testimony would have been the same whether or not Petitioner's trial counsel knew the full extent of her testimony when he initially met with her. Further, the trial court gave Petitioner's counsel the opportunity to interview Ms. Barrett a second time and then cross-examine her again, but counsel refused. Regardless of whether Petitioner's trial counsel knew the full extent of Ms. Barrett's testimony before she gave it, the trial court's decision to allow the testimony did not result in a denial of Petitioner's due process rights.

10

*Kemna*, 192 F.3d 1173, 1175 (8th Cir. 1999) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). Further, the Court is "not permitted to conduct [its] own inquiry into witness credibility; that is a task reserved to the jury." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

In this case, the prosecution set forth substantial evidence implicating Petitioner in the crimes with which he was charged, including, but not limited to: Petitioner's statements that if he could not have the victim, he would rather see her dead; Petitioner's statement to Ms. Anderson that she "would be the next one" if she caused Petitioner to go back to jail; Ms. Anderson's testimony that Petitioner had the same kind of rope used to tie up the victim in the back of his truck at the time of the murder; Ms. Anderson's testimony that she and Petitioner had a set of knives identical to the knife found in the victim's body and that one of those knives was missing; Petitioner's changing stories throughout the course of the investigation, particularly with respect to his sexual relations with the victim; and evidence that Petitioner's DNA matched DNA found at the scene of the crime. This evidence is more than sufficient to establish the essential elements of the crimes charged beyond a reasonable doubt.[3]

---

[3] In his Petition for Writ of Habeas Corpus, Petitioner also argues that he was denied due process and the right to a fair trial because the prosecution never proved motive. However, none of the four crimes for which Petitioner was charged (murder in the first degree, armed criminal action, forcible rape, and forcible sodomy) requires proof of motive. *See* Mo. Rev. Stat. § 565.020.1 ("A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter."); Mo. Rev. Stat. § 571.015.1 ("[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."); Mo. Rev. Stat. § 566.030.1 ("A person commits the crime of forcible rape if

**D.    INEFFECTIVE ASSISTANCE OF COUNSEL**

In his seventh and eighth grounds for habeas relief, Petitioner argues that his trial counsel was ineffective. Specifically, Petitioner alleges ineffectiveness due to trial counsel's failure to: subpoena and call Marshall Hortiz, Susan Calcaterra, Alvery Hortiz, Jr., and Sandra Hortiz as witnesses; strike Jurors Constance Murphy and Roosevelt Willis from the jury panel; call expert witnesses to refute the prosecution's DNA expert and medical examiner; and call alibi witnesses to provide testimony as to the whereabouts of Petitioner on the day the crimes took place.

An ineffective assistance of counsel claim requires a showing that counsel's conduct fell below the standard of professional reasonableness, and that there is a reasonable probability that the outcome would have been different had counsel acted professionally. *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). "In determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). This standard is heightened in the context of a § 2254 petition, as the Petitioner must show both that he has satisfied the *Strickland* test, and that the state court applied *Strickland* "in an objectively unreasonable manner." *Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004).

---

such person has sexual intercourse with another person by the use of forcible compulsion."); Mo. Rev. Stat. § 566.060.1 ("A person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion.").

### 1. *Failure to Call Witnesses (Ground Seven, Part One and Ground Eight)*

In ground seven, Petitioner argues that his trial counsel was ineffective due to their failure to call Marshall Hortiz, Susan Calcaterra, Alvery Hortiz, Jr., and Sandra Hortiz as witnesses. He also argues in ground eight that trial counsel was ineffective due to their failure to call alibi witnesses. These two grounds overlap because Marshall Hortiz and Susan Calcaterra, if called, would have both served as alibi witnesses, in addition to James Leonard, Jean Bartell, and Annassa Gillespie. Alvery Hortiz, Jr. and Sandra Hortiz, Petitioner's parents, if called, would have testified that they did not give Petitioner and Ms. Anderson a knife set as a wedding present, as alleged by Ms. Anderson.

With respect to the alibi witnesses, Petitioner cannot demonstrate that there is a reasonable probability that the outcome would have been different had Marshall Hortiz, Susan Calcaterra, James Leonard, Jean Bartell, or Annassa Gillespie given testimony. Even if they had all testified, there would still be a significant period of time for which no witness could provide an alibi for Petitioner and there is no guarantee that the testimony would have been effective. *See, e.g.*, *Freeman v. Graves*, 317 F.3d 898, 901 (8th Cir. 2003) ("[T]he testimony of alibi witnesses, especially friends and relatives of the defendant, does not assure an acquittal and is sometimes counterproductive."). Further, the decision not to present these alibi witnesses was part of Petitioner's trial counsel's strategy. His counsel believed that alibi evidence had been sufficiently presented through the testimony of the police officers who were involved in the investigation, and they preferred this testimony to that of Petitioner's brother, current wife, and friends, due to concerns regarding the appearance of partiality. Considering the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and the

absence of prejudice to Petitioner, this Court cannot conclude that trial counsel's decision not to call Marshall Hortiz, Susan Calcaterra, James Leonard, Jean Bartell, or Annassa Gillespie amounted to ineffective assistance of counsel.

In addition to his substantive failure to demonstrate ineffective assistance of counsel, Petitioner is procedurally barred from asserting the claim with respect to James Leonard, Jean Bartell, and Annassa Gillespie. "In order for deficient trial work to constitute the kind of 'cause' that would excuse a procedural bar, counsel must have been constitutionally ineffective under *Strickland v. Washington*, . . . [a]nd petitioner must have independently presented this ineffective assistance claim to the state court for adjudication." *Clemons v. Luebbers*, 381 F.3d 744, 752 (8th Cir. 2004). Petitioner has not presented his ineffective assistance of counsel claim with respect to James Leonard, Jean Bartell, and Annassa Gillespie to the state court. *See* Respondent's Exhibit K, pp. 5-6 n.5. Thus, the claim is procedurally barred and must fail.

With respect to the testimony of Alvery Hortiz, Jr., and Sandra Hortiz, Petitioner again cannot demonstrate that there is a reasonable probability that the outcome would have been different had his parents testified about the source of the knife set. While the testimony would have contradicted Ms. Anderson's admittedly uncertain testimony regarding where she and Petitioner had obtained the knife set,[4] it did not negate Ms. Anderson's consistent testimony that she and Petitioner owned a set of knives identical to the one found in the victim's body and that one of the knives was missing from that set. Additionally, the same partiality concerns arise with respect to testimony from Petitioner's parents as arose with respect to testimony from his brother,

---

[4]At trial, Ms. Anderson testified that the knife set was given to her and Petitioner. When asked by Petitioner's trial counsel who gave them the knife set, Ms. Anderson responded, "I *believe* his mother." Respondent's Exhibit A, p. 645 (emphasis added).

14

wife, and friends. Thus, trial counsel's failure to call Petitioner's parents as witnesses did not prejudice Petitioner and does not amount to ineffective assistance of counsel.

    **2.** *Failure to Strike Jurors Constance Murphy and Roosevelt Willis (Ground Seven, Part Two)*

Also in his seventh ground for habeas relief, Petitioner asserts that his trial counsel was ineffective due to their failure to strike two potential jurors, Constance Murphy and Roosevelt Willis, from the jury pool. The Court must reject this argument because Petitioner cannot demonstrate that there is a reasonable probability that the outcome would have been different had Ms. Murphy and Mr. Willis not been members of the jury. Both of these jurors initially expressed that they would tend to believe the testimony of a police officer more than the testimony of another individual, due solely to his or her status as a police officer. However, when questioned further, both potential jurors admitted that they would be able to maintain an open mind with respect to the testimony of any police officers. Thus, based on the information obtained during voir dire, there is no indication that the presence of either Ms. Murphy or Mr. Roosevelt would result in an unfair trial for Petitioner. *See, e.g.*, *Edgar v. Dormire*, 2005 WL 2406159, at *3 (W.D. Mo. Sept. 29, 2005) ("'[I]f the prospective juror states he or she can set aside a stated concern, be fair and impartial, and follow the courts [sic] instructions, the prospective juror has been rehabilitated' and is qualified to sit on the jury." (quoting *State v. Wilson*, 998 S.W.2d 202, 205 (Mo. Ct. App. 1999)). Further, considering that Petitioner's trial counsel intended to present alibi evidence through police testimony, the presence of jurors who are inclined to believe police officers' testimony could arguably be beneficial. Ultimately, "[t]he decision to strike a venireperson is generally a matter of trial strategy." *Boyd v. State*, 86 S.W.3d 153, 158 (Mo. Ct.

15

App. 2002). Due to the "strong presumption that counsel's strategic choices were reasonable," *Forsyth v. Ault*, 537 F.3d 887, 891 (8th Cir. 2008), and Petitioner's failure to rebut the presumption, the Court must reject this ineffective assistance of counsel argument.

### 3. *Failure to Call Expert Witnesses (Ground Seven, Part Three)*

Petitioner further asserts that his trial counsel was ineffective for failing to call expert witnesses to refute the prosecution's DNA expert and medical examiner. However, this argument is procedurally barred due to Petitioner's failure to raise the argument at the state court level. As previously noted, "[i]n order for deficient trial work to constitute the kind of 'cause' that would excuse a procedural bar, counsel must have been constitutionally ineffective under *Strickland v. Washington*, . . . [a]nd petitioner must have independently presented this ineffective assistance claim to the state court for adjudication." *Clemons*, 381 F.3d at 752. The first time that Petitioner raised his expert witness argument was in this habeas petition. Thus, the argument is procedurally barred and must be denied.

### E. **JURORS CONSTANCE MURPHY AND ROOSEVELT WILLIS (*Ground Nine*)**

In his ninth and final ground for habeas relief, Petitioner argues that he was denied due process as a result of the presence of Constance Murphy and Roosevelt Willis on the jury. "'Due process means a jury capable and willing to decide the case solely on the evidence before it.'" *Johnson v. Armontrout*, 961 F.2d 748, 752 (8th Cir. 1992) (quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). As previously explained, both of the jurors at issue expressed their willingness to approach the testimony of police officers with an open mind, despite their admissions that they would tend to believe a police officer's testimony over that of another individual. Each juror stated that he or she was willing to examine the evidence in a fair and impartial manner and to

make a decision based on the evidence. As a result, the presence of these jurors on the jury panel did not prejudice Petitioner, nor did it violate his due process rights.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability may only be issued when "'the applicant has made a substantial showing of the denial of a constitutional right.'" *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Petitioner has made no such showing. Furthermore, the Court does not believe that reasonable jurists might find the Court's decision debatable or wrong, for purposes of issuing a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *Slack*, 529 U.S. at 483-84. Therefore, the Court will not issue a certificate of appealability as to any claim raised in the Petition.

## V. CONCLUSION

Each of Petitioner's nine grounds for habeas relief are rejected, as outlined in the foregoing analysis. As a result, the Court will deny the Petition for Writ of Habeas Corpus and will not issue a certificate of appealability as to any claim raised in the Petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Alvery Louis Hortiz III's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [doc. #2] is **DENIED**.

Dated this 9th Day of February.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE